*In the Matter of the Appeal of* G. W. MARTIN AND
CHARLES GEORGE *from a Survey of Land made by*
R. B. BURCHFIEL, *County Surveyor.*

No. 17,408.

SYLLABUS BY THE COURT.

1. COUNTY SURVEYOR—*Duties—Boundaries—Statutory Rules.* It
is the duty of a county surveyor, notified under the statute
(Gen. Stat. 1909, § 2272) to survey land and establish its
corners and boundaries, to proceed according to the statutory
rules; and the record of a previous survey, on file in his office
and apparently binding on the parties in interest because not
appealed from, is merely evidence to be considered in de-
termining where corners were established by the government.

2. ———— *Resurvey—Appeal—Waiver—Estoppel.* The conclu-
sive effect of a resurvey not appealed from (Gen. Stat. 1909,
§ 2275) may be waived. A resurvey procured according to the
statute by one of the interested parties amounts to such a
waiver on his part, and should an appeal be taken from the
resurvey on the ground that the statutory rules were not
observed in making it he will not be heard to say that the
former survey, with which the resurvey coincides, is con-
clusive.

Appeal from Harper district court. Opinion filed
January 6, 1912. Reversed.

*Samuel Griffin,* for the appellants.

The opinion of the court was delivered by

BURCH, J.: Minnie E. Swan owns a portion of section
31, township 33, range 9, in Harper county. The appel-
lant, George, owns another portion and the appellant,
Martin, owns the remainder of the section. Acting un-
der the statute, Swan notified Burchfiel, the county
surveyor, to survey her land and permanently establish
its corners and boundaries. It appears that the region
in which this section lies was surveyed by the govern-
ment in 1871. The visible marks of this survey having
been generally obliterated, although some still remain,

in 1884 another survey was made by the same authority, which is known as the Tweedale survey. Many of Tweedale's corners are still in existence, and the results of his work are still evidenced by trees, hedgerows, vestiges of 'fences, old roads, buildings and other objects located according to it. In 1894 Ben Lee, the then county surveyor, made a survey of several sections along the county line, including the one whose boundaries are in dispute. His survey was a distinctly original and independent effort. He ignored the government surveys, and even went so far as to refer in his report to government corners as witness marks to corners which he established in the same neighborhood. The Lee survey was not appealed from, and Burchfiel conceived it to be his duty to relocate it, as far as possible, on the ground. The result was that George loses 13.86 acres and Martin loses 10.75 acres as compared with the Tweedale survey. A private surveyor employed by George and Martin was able to locate the Tweedale survey with only negligible variations. An appeal was taken from Burchfiel's report, but the district court confirmed it and this appeal followed.

The county surveyor misconceived his duty. The notice to him called for a survey of the Swan land and the establishment of its corners and boundaries. In making such survey he should have been guided by the statutory rules, which read as follows:

"In reëstablishing missing corners, where no bearing or witness tree or trees can be found, the county surveyor or his deputy shall establish said missing corners in accordance with the government survey. (Gen. Stat. 1909, § 2261.)

"In the resurvey of lands surveyed under the authority of the United States, the county surveyor shall observe the following rules, to wit: *First*, section and quarter-section corners, and all other corners established by the government survey, must stand as the true corners. *Second*, they must be reëstablished at the identical spot where the original corner was located by the

22—86 KAN.

government surveyor, when this can be determined. *Third*, when this can not be done, then said corners must be reëstablished according to the government field-notes, adopting proportionate measurements where the present measurements differ from those given in the field-notes." (Gen. Stat. 1909, § 2271.)

The county surveyor has no authority to pass judicially upon the ownership, notices, service, appearances, and other jurisdictional facts essential to the validity of a previous survey irrespective of an appeal from it. For some extrinsic reason such survey may not have been binding upon the parties named in the record, and for other reasons it may not be binding upon present claimants. The primary purpose of invoking fresh action may be to supplant a survey good on its face but in fact void with a valid one, and it is not for the surveyor to say whether or not the earlier one is final and conclusive. Consequently the Lee survey presented itself to Burchfiel merely as evidence to be considered in ascertaining where missing corners had been established by the government.

The more difficult question is whether or not the appellants are concluded in this proceeding by the Lee survey, which the present county surveyor undertook to reproduce. There is nothing in the abstract indicating that the parties to the Lee survey were not bound by it or that the parties now interested are not privies in ownership. It may be assumed, therefore, in support of the judgment of the district court that the appellants were denied relief because of the statute which reads as follows:

"The corners and boundaries established in any survey made in pursuance of an agreement, or in any survey where no appeal is taken from the surveyor's report, and such corners and boundaries as are established by the decree of the court, shall be held and considered as permanently established, and shall not thereafter be changed." (Gen. Stat. 1909, § 2275.)

This statute was evidently intended to prevent the

reopening of a settled boundary controversy against the
will of any one interested.   It does not, however, pre-
clude resurveys by agreement or submission by one
owner to an official resurvey procured by another.   In
either of these cases the second survey will supersede
the first, notwithstanding the statute.   A survey from
which no appeal has been taken is like a final judgment.
A party may take his chances and sue again upon an
adjudicated cause of action.   By bringing such a suit
he elects to disregard the former judgment and would
not be heard to say, in reply to an aggressive answer,
that his cause of action already had been adjudicated.
The defendant in such a suit may waive the defense of
*res judicata,* and should he choose to do so the cause
must be tried and determined as if it were an original
one.   The same principles apply here.   The notice called
for a survey of the Swan land and the establishment of
its corners and boundaries generally.   It was, there-
fore, a demand for a survey according to law.   The ap-
pellants might have enjoined the survey on the ground
that the Lee survey was final (*Washington v. Richards,*
78 Kan. 114, 96 Pac. 32), but they chose to allow it to
proceed.   When they found that it was a mere reproduc-
tion of the Lee survey and not a survey made according
to statutory rules they had the right to appeal and urge
before the district court any lawful objection which
might be raised to the report.   (*Washington v. Rich-
ards,* 78 Kan. 114, 116, 96 Pac. 32.)   The objection they
did make was that the survey was made in disregard
of the statute, and since the objection is well founded
the survey ought to be set aside.   The case of *Spacy v.
Evans,* (Ind. 1897) 48 N. E. 355, is illustrative.   A
statutory survey was made in 1871 and a hedge was
afterward located with reference to it on what became
Evans' land.   The survey was not appealed from and
under the statute became conclusive.   In 1885 two new
surveys were made, which, however, were not binding
on the parties in interest.   In 1896 Evans gave statu-

tory notice of another survey, to which Spacy consented. This survey located the hedge on Spacy's land. Spacy cut the hedge and Evans recovered damages in the circuit court for the trespass on the theory that the statute made the survey of 1871 incontestible. Spacy appealed and the supreme court reversed the judgment. The opinion reads:

"Both parties contend that a survey made pursuant to the statute is conclusive unless appealed from within the satutory period, and such seems to be the rule. [Citing cases.] Upon this proposition the appellee seeks to maintain the corners located by the first survey, and the appellant demands an adherence to each of the other surveys. The second and third surveys do not appear to have been made pursuant to notice to or with the concurrence of both owners of the lands at that time. The last survey, that of February 6, 1896, although made upon notice from the appellee, was made with the express consent of the appellant. If, as the parties insist, a survey in pursuance of the statute is conclusive, as an adjudication of title or the establishment of a line or of corners affecting title, we know of no rule denying the parties interested the right to waive the effect of such survey, and, either by agreement or another survey, establish another line or corner. The rule that a survey is conclusive has no stronger force than a judgment or an estoppel *in pais*, and can certainly be disregarded by the mutual conduct of the parties affected. As illustrated by counsel for the appellant, the appellee could not procure a new trial by seeking a new survey, and then, because he may not have been entitled to the new trial, or because it did not result to his satisfaction, urge the original survey, and deny his right to the new survey." (48 N. E. 355.)

Private rights only are involved and Swan can not, after demanding a legal survey, maintain the fruits of a resulting erroneous survey by taking the position that she had no right in the beginning to institute a resurvey.

Under the law the object of every resurvey is to find or reëstablish the lines and corners fixed by the government. The report of the Lee survey indicates on its

face that he entertained no such purpose and worked to no such end. It is questionable whether his survey is of any validity, although no appeal from it was taken. However, in view of the conclusions announced above the question need not be decided.

The judgment of the district court is reversed and the cause is remanded with direction to set aside the survey.

MASON, J. (dissenting) : I think that where a county surveyor has under the statute permanently established the corners and boundaries of a tract of land, and filed a report thereof in his office, that record is ordinarily conclusive upon the county surveyor in any subsequent survey having for its purpose, or a part of its purpose, the establishment of the same corners and boundaries of the same tract.

If, however, the duty of the surveyor, when called upon to make a later survey, is merely to try to relocate the government corners, and if he has no jurisdiction to decide whether the parties are bound by the prior survey, I think the court on appeal is in the same situation, and the final results of both surveys must stand, leaving the parties to settle by ejectment, or other action which is controlling.

I think the parties concerned may waive the result of a survey, but I do not think they should be regarded as having waived it *merely* by asking or taking part in a later survey. I would think the ordinary presumption would be that the later survey was made necessary by the monuments set during the first survey having been lost.

Even if the request for the later survey showed affirmatively a purpose to disregard the earlier survey, I doubt if a failure to enjoin the later survey would amount to a waiver of the earlier one.

I am authorized to say that Justice BENSON concurs in this dissent.

SMITH, J. (dissenting) : I also dissent, with the limitation that the survey to be conclusive must be made with notice to all landowners affected thereby and who do not appeal therefrom.