No. 28,057.

E. S. STANLEY, *Appellant*, v. THE COUNTY SURVEYOR OF SHERIDAN COUNTY, *Appellee*.

(266 Pac. 929.)

Opinion filed May 5, 1928.

*F. W. Mahin,* of Smith Center, and *H. D. Mahin,* of Clarendon, Va., for the appellant.

*F. A. Sloan,* of Hoxie, for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: E. S. Stanley asks a review of a decision of the trial court approving a survey made by the county surveyor. The case was tried upon an agreed statement of facts, from which it appears that Stanley owned the northwest quarter of section seven, township six, range thirty. The original monuments were found at each corner of the section, and quarter-section stones were also found on the east and west sides of the section, but no quarter-

section stones were found on the north and south sides of the section. The surveyor finding the absence of the stones on the north and south lines and a discrepancy between the exterior limits as shown by the monuments found and the field notes, so that there was an excess of area within the section, established the line between the northwest quarter and the northeast quarter of the section on a proportionate basis. He took the distance from the stone at the northeast corner of the section to the northwest corner and placed the quarter-section stone at a point on that line equidistant from the established government corners of the section, and the south line of the section was treated in like manner by placing the quarter-section stone halfway between the south corners of the section. The intersection of the lines leading north to south and from east to west was established as the center of the section. The government field notes did not correspond with the established lines as indicated by the original survey or those established by the resurvey in question. The government field notes as to the south line of the section are as follows:

"West on random line between sections seven and eighteen, Va. 12D 40′ E. 40.00 chains set temporary one-fourth sec. cor. 77.40 chains intersected west boundary 11 lks south of corner to sec. 7 and 18, from which cor. I run S 89D 55′ E. on a true line between sections seven and eighteen, 37.40 chains set sandstone 18 x 9 x 4 inches for a one-fourth sec. corner. 77.40 chains the corner to sections 7, 8, 17 and 18."

The government field notes of the north line follow:

"West on random line between secs. 6 and 7, Var. 12D 40′ 40.00 chains set temporary one-fourth section cor. 77.10 chains intersected west boundary, 18 lks south of corn. to secs. 6 and 7, from which cor. I run S 89D 52′ E. on a true line between sections six and seven 37.10 chains, set sandstone 18 x 9 x 4 inches for one-fourth section corner. 77.10 chains, the corner to section 5, 6, 7 and 8."

Finding the discrepancy mentioned and the surplus of territory within the established exterior lines of the section, the surveyor placed the quarter-section stone between plaintiff's quarter section and the one east of it on the proportionate basis. In the agreed statement the parties stipulated:

"That the only question to be decided in this case is as to whether the survey is correct in establishing the quarter-section corner stones on the basis of proportionate measurements as was done in this case, or whether such quarter-section stones should have been established 40 chains or 160 rods west from the northeast corner of section seven, and 40 chains from the southeast corner of section seven, as contended for by the appellant, E. S. Stanley."

The surveyor undertook to find and establish the boundary line between the northwest and the northeast quarters of section seven.

"It is the duty of the county surveyor notified under the statute (Gen. Stat. 1909, § 2272) to survey land and establish its corners and boundaries, to proceed according to the statutory rules." (*In re Martin's Appeal*, 86 Kan. 336, 120 Pac. 545. See, also, *Roadenbaugh v. Egy*, 88 Kan. 341, 128 Pac. 381.)

The pertinent statutory rule provides:

"In the resurvey of lands surveyed under the authority of the United States, the county surveyor shall observe the following rules, to wit: First, section and quarter-section corners, and all other corners established by the government survey, must stand as the true corners. Second, they must be reëstablished at the identical spot where the original corner was located by the government surveyor, when this can be determined. Third, when this cannot be done, then said corners must be reëstablished according to the government field notes, adopting proportionate measurements where the present measurements differ from those given in the field notes." (R. S. 19-1422.)

The surveyor, it appears, followed the rules prescribed by this section. Whether the quarter-section stones had ever been placed on the north and south lines of the section is not shown, but it is certain that they could not be found. It is the duty of a county surveyor in such a resurvey to scrupulously follow the original survey and adopt the corners established by the government as the true corners. He cannot correct what the government surveyor has actually done, but when that which was done by him cannot be ascertained the county surveyor should follow the rules prescribed by the statute. There being no question about the location of the corners of the section as established by the government except as to the quarter-section corner on the north and south sides of the section, it seems quite clear that the resurvey was correctly made.

Plaintiff argues that as the section adjoins a township line a different rule should be followed, but there is no such exception in the statute referred to, and we think the statute must control in a resurvey of the section. The lines marked on the ground are to be regarded as the true survey, and unquestioned monuments must prevail over courses and distances expressed in field notes. In a somewhat similar case where there was a variance, we said:

"Where, on a line of the same survey and between remote corners, the whole length of which is found to be variant from the length called for, it is not to be presumed that the variance was caused from a defective survey in any part, but it must be presumed, in the absence of circumstances showing the contrary, that it arose from imperfect measurement of the whole line, and

such variance must be distributed between the several subdivisions of the line in proportion to their respective length." (*Miller v. Land Co.,* 44 Kan. 354, syl. ¶ 2, 24 Pac. 420. See, also, *McAlpine v. Reicheneker,* 27 Kan. 257.)

In speaking of an excess or deficiency in a tract where there is a variance between known corners on a line and the calls of the field notes, it was said:

"On a line of the same survey and between remote corners, the whole length of which is found to be variant from the length called for, it is not to be presumed that the variance was caused from a defective survey of any part, but it must be presumed in the absence of circumstances showing the contrary that it arose from imperfect measurement of the whole line and such variance must be distributed between the several subdivisions of the line in proportion to their respective lengths." (9 C. J. 295.)

The unquestioned markers established at the corners and two sides of the section indicate a purpose to divide it into four equal parts and whether there be a surplus or a deficiency in the section, each subdivision should share in the benefit or burden of any excess or deficiency of the area within the section.

The judgment is affirmed.